UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Katherine Flynn,

Plaintiff,

v.

Target Corporation,

Defendant.

---

**Report and Recommendation**

17-CV-565V

## I. INTRODUCTION

On October 5, 2016, plaintiff Katherine Flynn ("Flynn") allegedly suffered injuries at a Target retail store when a fellow shopper in a motorized shopping cart collided with her. Flynn commenced suit in state court. When defendant Target Corporation ("Target") served a demand for a specific amount of monetary damages, Flynn asserted $100,000 in damages. Target accordingly removed the case to federal court. Just nine days after serving her initial response and six days after the removal, Flynn attempted to amend her damages asserted to claim only $75,000. Flynn then filed a motion to remand the case to state court (Dkt. No. 13, hereafter [13]), asserting that the Court lacks subject-matter jurisdiction due to an insufficient amount in controversy. Target responds, in effect, that Flynn is bound to the original response that she gave to a demand that followed proper procedure.

District Judge Lawrence J. Vilardo has referred this case to this Court under 28 U.S.C. § 636. [6.] The Court held oral argument for the pending motion to remand on January 23, 2018. For the reasons below, the Court respectfully recommends denying the motion.

## II. BACKGROUND

This case concerns allegations of a personal injury that occurred at a Target retail store on October 5, 2016 in Amherst, New York. On that day, around 11:15 AM, Flynn was shopping in the "air care" section, an area of shelving devoted to products such as air fresheners and scented candles. [13-6 at 5–7.] What happened next is not clear from the early record in this case, but according to the Guest Incident Report that the store completed that day, another customer "came around on [an] electric [*i.e.*, motorized] shopping cart and drove into her." [13-6 at 8.] Flynn sustained injuries to her left lower waist and her left upper hip. [*Id.*]

On February 10, 2017, Flynn sued Target in New York State Supreme Court, Erie County. [5-2.] The complaint referred to the collision with the shopping cart and contained a single claim for negligence. As required by New York C.P.L.R. ("CPLR") 3017(c), the *ad damnum* clause of the complaint did not specify a numerical amount of damages sought. Flynn served Target through the New York Secretary of State on February 21, 2017. [13-2 at 9.]

Target's desire to pin down a specific number for claimed damages set in motion the events that led to the pending motion for remand. On or around March 14, 2017, Target served Flynn with a demand for a specific amount of monetary damages, pursuant to CPLR 3017(c). [13-3 at 2.] When Flynn did not provide a response, Target sent Flynn a letter dated May 26, 2017 that threatened a motion to compel a response to the demand for monetary damages. [13-4 at 4.] Target proceeded to file a motion to compel on or around June 9, 2017. [13-5.] By letter dated June 9, 2017, Flynn responded to various discovery demands from Target. [13-6.] With respect to damages, Flynn responded that "[a]t this time, plaintiff's general and special damages are not

ascertainable. Further information will be sought during the course of discovery, and answers to this demand will be supplemented and/or amended as necessary." [13-6 at 4.] By letter dated June 16, 2017, Target informed Flynn that it would consider withdrawing the motion to compel if she provided a specific amount of monetary damages as required by CPLR 3017(c). [13-7.] Three days later (going by the dates on the letters), on June 19, 2017, Flynn complied with CPLR 3017(c) as follows:

> In response to your Demand for Specific Relief, please be advised that plaintiff hereby demands $100,000.00 for her general and special damages. Please advise if you will now withdraw your motion to compel.

[13-8 at 2.] Target filed its notice of removal to federal court three days after Flynn's letter, on June 22, 2017. [1.] On June 28, 2017, just six days after the notice of removal and nine days after her initial CPLR 3017(c) response, Flynn sent Target the following letter amending her response:

> Please be advised that we reduce our demand in this matter to $75,000.00. Please advise if you will withdraw your Notice of Removal at this time.

[13-10 at 2.] The record does not indicate that any substantive events occurred privately between the parties between June 19 and June 28, 2017. The docket for this case indicates that nothing happened in federal court during that time beyond assignment of the case to Judge Vilardo; issuance of a notice about the option to consent to a Magistrate Judge; and an automatic referral to mediation.

Flynn filed the pending motion for remand on December 4, 2017. In support of the motion, Flynn's counsel filed an affirmation, with exhibits, that summarized the events that the Court described above. Flynn's counsel did not file a memorandum of law. Target's counsel did file a memorandum of law, along with other papers, in opposition to remand. The core of the

opposition consists of two principles that intertwine here: that diversity jurisdiction is a snapshot taken at the time of removal, and that Target followed proper procedure under CPLR 3017(c):

> In this case, due to New York's pleading requirements that prohibit a plaintiff in a personal injury action from stating the amount demanded in the complaint, the amount in controversy was established as of Plaintiff's response to Demand for Specific Relief Requested pursuant to CPLR §3017(c), (*see* Exhibit B, attached to Declaration of James V. Vandette, Esq, dated October 13, 2017, filed December 4, 2017). Thus, the controlling point in time is when the case became removable by virtue of Plaintiff's response to Defendant's Demand for Specific Relief Requested. Plaintiff cannot now change course for the sole purpose of escaping the jurisdiction of the Federal Court. Such conduct is simply not permitted as demonstrated by all existing case law on the subject.

[15-1 at 4.]

## III. DISCUSSION

### *A. Motions to Remand Generally*

The basics of removal and remand are straightforward. District courts have original jurisdiction over any civil action in which the amount in controversy exceeds $75,000 and the litigants have diversity of citizenship. *See* 18 U.S.C. § 1332(a) (Westlaw 2018). For purposes of diversity and removal, and with exceptions not relevant here, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." *Id.* § 1332(c)(1). Procedurally, "[a] defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." *Id.*

§ 1446(a). With diversity jurisdiction, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that the notice of removal may assert the amount in controversy if the initial pleading seeks . . . a money judgment, but the State practice . . . does not permit demand for a specific sum . . .; and removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." *Id.* § 1446(c).

Removal is a unilateral action, but plaintiffs who believe that a removal occurred improperly can make a motion for remand under 28 U.S.C. § 1447(c). The removing party bears the burden of proving that remand was proper. "As [a removing party] is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court. The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *accord Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010) ("The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it.") (citations

omitted). Parties seeking remand enjoy the benefit of the doubt. "The right to remove a state court action to federal court on diversity grounds is statutory and must therefore be invoked in strict conformity with statutory requirements. In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045–46 (2d Cir. 1991) (citations omitted), *superseded in part on other grounds by* FRCP 5, 83 (1995 amendments), *as recognized in Contino v. U.S.*, 535 F.3d 124 (2d Cir. 2008).

*B. Amount in Controversy and Timing of Amended Monetary Damages*

The unusual fact scenario that this case presents—a change in Flynn's damages demand just nine days after serving the original demand, and six days after the notice of removal, with no other intervening events—warrants a closer look at the principles that determine an amount in controversy. For purposes of removal and diversity jurisdiction, the amount in controversy is a snapshot of a plaintiff's claims at the time of removal. *See Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) ("[W]e measure the amount in controversy as of the date of the complaint."); *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) ("The amount in controversy is determined at the time the action is commenced.") (citation omitted). The time of removal does not have to mean literally the exact moment when the defense attorney presses a button to submit removal papers to the CM/ECF electronic filing system. Courts have some leeway to clarify the amount in controversy within a short time after the filing of removal papers. *See Yong Qin Luo v. Mikel*, 625 F.3d 772, 775–76 (2d Cir. 2010) ("The district

court held an initial status conference with the parties, and plaintiff declined to limit her damages $75,000 or less. Shortly after that conference, Luo's counsel told defense counsel that Luo's demand was $600,000. At the time of removal, then, the amount in controversy exceeded $75,000."). Courts assess the amount in controversy from the plaintiff's view of the claims, to avoid complications that would arise from factors such as affirmative defenses that could be waived. *See Scherer*, 347 F.3d at 398; *Kheel v. Port of New York Auth.*, 457 F.2d 46, 49 (2d Cir. 1972) ("Generally, for this reason, the amount in controversy is calculated from the plaintiff's standpoint; 'the value of the suit's intended benefit' or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested.") (citations omitted); *Dimich v. Med-Pro, Inc.*, 304 F. Supp. 2d 517, 519 (S.D.N.Y. 2004) ("[T]he prevailing method of calculating value in this Circuit is the 'plaintiff's viewpoint' approach, where one calculates the value to the plaintiff, not the cost to the defendant.") (citations omitted). Because subject-matter jurisdiction should not depend on the usual ups and downs of proving or disproving the merits of a case, post-removal events generally will not change the snapshot of a case taken upon removal. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938) ("But the fact that it appears from the face of the complaint that the defendant has a valid defense, if asserted, to all or a portion of the claim, or the circumstance that the rulings of the district court after removal reduce the amount recoverable below the jurisdictional requirement, will not justify remand."). The following cases, including cases cited in Target's memorandum of law, provide examples of post-removal events that changed the merits of a case at a later time but did not alter the removal snapshot:

- *Luo*, 625 F.3d at 776: Following a status conference that occurred after removal, plaintiff asserted $600,000 in damages. On appeal, plaintiff challenged subject-matter jurisdiction for the first time and offered for the first time to stipulate to no more than $75,000 in damages. By then, the amount in controversy was established.

- *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 506 (2d Cir. 2005): The District Court dismissed consequential damages claims on summary judgment, and then dismissed the actual damages claim for lack of subject-matter jurisdiction, because those damages fell below the jurisdictional threshold. The Second Circuit decided that "a summary judgment dismissing one or more aggregated claims does not defeat jurisdiction even when it reduces the amount in controversy to below the jurisdictional threshold."[1]

- *Scherer*, 347 F.3d at 399: *Res judicata* is a waivable affirmative defense; a collateral court's verdict on liability, therefore, did not change the amount in controversy at the time of removal.

- *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999): This is another case in which the post-removal event in question was summary judgment to the defense for one of the affirmative defenses. "Wolde–Meskel's breach of contract claim was defeated by the legal defenses adduced by VIPCS, and by Wolde–Meskel's inability to prove that the totality of the circumstances created an implied employment contract. Summary judgment on Wolde–Meskel's breach of contract claim was therefore appropriate. But while that ruling reduced the amount in controversy, it did not establish the quite distinct proposition that the amount claimed was never in controversy."

- *Tongkook*, 14 F.3d at 785: Plaintiff sued defendant for breach of a sales contract and asserted at the outset that the amount owed was $117,621.05. One year into the litigation, the parties discovered a failure to credit defendant with a payment of $80,760, meaning that the actual amount in controversy was $36,861.05. The District Court asserted that it retained subject-matter jurisdiction because plaintiff had asserted the larger amount in good faith. The District Court took the case through a one-day bench trial that ended in plaintiff's favor. The Second Circuit vacated the

[1] Interestingly, the Second Circuit nonetheless affirmed dismissal of the entire case because of a procedural quirk. Plaintiff in *Hall* failed to preserve the jurisdictional issue on appeal.

judgment with instructions to dismiss for lack of subject-matter jurisdiction; despite plaintiff's good faith, the inability to cross the jurisdictional threshold was a legal certainty that existed at the time of removal.

- *Coventry Sewage Assocs. v. Dworkin Realty Co.*, 71 F.3d 1, 8 (1st Cir. 1995): "In the instant case, an independent third party with otherwise no connection to the case made an apparently non-obvious error so that the amount-in-controversy at the time of filing, in fact, exceeded the jurisdictional minimum. Coventry had no reason to know that its claimed amount of damages was in error. Moreover, the reduction of the amount in controversy resulted from acts occurring wholly after the action commenced. We hold that, under these extraordinary circumstances, the district court's jurisdiction was not disturbed by the subsequent reduction of the amount in controversy."

- *St. Paul*, 303 U.S. at 295–96: An initial complaint asserted an above-threshold amount of damages for workers' compensation benefits. A second amended complaint attached documentary exhibits, obtained during discovery and after the original complaint, showing that actual damages fell below the threshold (then $3,000). The Supreme Court nonetheless held that subject-matter jurisdiction existed: "Not until the second amended complaint was filed in the United States court, in November 1934, did the respondent furnish a statement of the particulars of its claim. That statement is not inconsistent with the making of a claim in good faith for over $3,000 when the suit was instituted. Nor is there evidence that the petitioner when it removed the cause knew, or had reason to believe, that the respondent's claim, whether well or ill founded in law or fact involved less than $3,000. On the face of the pleadings petitioner was entitled to invoke the jurisdiction of the federal court and a reduction of the amount claimed after removal, did not take away that privilege."

- *Barash v. Ford Motor Credit Corp.*, No. 06CV6497(JFB)(ARL), 2007 WL 1791656, at *7 (E.D.N.Y. June 20, 2007): A *pro se* plaintiff sued four defendants under federal and state fair-credit laws; he claimed no actual damages but $100,000 from each defendant for punitive damages. When defendants removed to federal court, plaintiff tried to claim that his estimate of punitive damages was "arbitrary" and tried to amend his complaint to assert a below-threshold amount. The District Court found that it had subject-matter jurisdiction because punitive damages were available under state law and because plaintiff could not show to a legal certainty that punitive damages would fall below $75,000.

- *Flynn v. Schwan's Consumer Brands Inc.*, No. 15 CIV. 4509 CM, 2015 WL 4560870, at *2–3 (S.D.N.Y. July 27, 2015): Plaintiff sued a frozen-pizza manufacturer for product liability in the amount of $150,000. After defendant removed, plaintiff filed an amended complaint reducing the damages claimed to under $74,000. The District Court nonetheless found the case properly removed and found that it had subject-matter jurisdiction, citing *St. Paul* and other cases cited in Target's memorandum of law.

After reviewing the above cases, and again noting Flynn's decision to submit no supporting authority through a memorandum of law, the Court has decided that Target's argument is the better approach. The cases discussed above involved longer passages of time, and more significant post-removal events, than what happened here. This case is a close call because Flynn changed course quickly, within a matter of days, and before anything happened that would cause Target prejudice, apart perhaps from the removal fee. Nonetheless, Flynn has made no showing at all that she fell victim to bad faith or some kind of mistake that existed to a legal certainty as of the time of removal. Flynn filed a complaint that asserted injuries but avoided an exact amount of damages in accordance with CPLR 3017(c). Target followed proper procedure in using CPLR 3017(c) to demand a damages amount. Flynn had plenty of time to estimate the amount of damages and asserted an amount of $100,000. Flynn knew, or should have known, why Target was asking about the amount of damages; she could have asserted a below-threshold amount and backed up her assertion with medical or other documentation of her injuries. Flynn knowingly asserted an amount that created diversity jurisdiction. Target then followed proper procedure in filing a notice of removal.

In short, Target did everything right based on information that Flynn gave it in good faith; this Court has cautioned attorneys before about the importance of clarifying damages before

removing cases. *See Ortiz v. JCPenney*, No. 16-CV-569W, 2016 WL 6694249, at *6 (W.D.N.Y. Nov. 15, 2016), *report and recommendation adopted*, No. 1:16-CV-0569 EAW, 2016 WL 7131559 (W.D.N.Y. Dec. 6, 2016). The use of formal procedure to ascertain damages, and the absence of documentation about Flynn's injuries, distinguish this case from a case that this Court reviewed a few years ago, in which a stipulation to a sub-threshold amount helped resolve uncertainty that the defendant fostered by not using CPLR 3017(c). *See Burg v. Primal Vantage Co.*, No. 13-CV-1121S, 2014 WL 448519, at *5 (W.D.N.Y. Feb. 4, 2014), *report and recommendation adopted*, No. 13-CV-1121S, 2014 WL 1609658 (W.D.N.Y. Apr. 22, 2014). To override the use of proper procedure, simply because Flynn might not have realized what Target was doing, would come too close to the hazard that the Supreme Court described in *St. Paul*: "If the plaintiff could, no matter how bona fide his original claim in the state court, reduce the amount of his demand to defeat federal jurisdiction the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice." *St. Paul*, 303 U.S. at 294 (1938).

## IV. CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends denying Flynn's motion to remand. [13.]

## V. OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below. Any objections to this Report and Recommendation must be electronically filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. "As a rule, a party's failure to object to any purported error or omission in a magistrate

judge's report waives further judicial review of the point." *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted).

SO ORDERED.

__/s *Hugh B. Scott*_______
Honorable Hugh B. Scott
United States Magistrate Judge

DATED: February 8, 2018