UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Katherine Flynn,

                            Plaintiff,

     v.

Target Corporation,

                            Defendant.

**Report and Recommendation**

17-CV-565V

---

**I.    INTRODUCTION**

       On October 5, 2016, plaintiff Katherine Flynn ("Flynn") allegedly suffered injuries at a Target retail store when a fellow shopper in a motorized shopping cart drove into her. Flynn did not report the incident right away; she completed her purchases, went home, and then returned to file an incident report. Consequently, no one knows which cart made contact with her, who drove the cart, or whether anyone witnessed the incident. No video footage captured the incident. Nonetheless, Flynn accuses Target of failing to warn customers about defective carts and dangerous premises.

       Following discovery, Target filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 29, docket citations hereafter in brackets.) Without witnesses and without a cart to inspect, Target asserts more broadly that its motorized shopping carts are inspected weekly; that carts in need of repair are taken out of service; and that the area where the incident occurred was free of obstructions or hazards when it occurred. Flynn responds that the case should go to trial because Target has not rebutted her deposition testimony that the incident did occur and that an unidentified store staffer remarked about the conduct of cart drivers that day.

District Judge Lawrence J. Vilardo has referred this case to this Court under 28 U.S.C. § 636(b). [6]. The Court has deemed the motion submitted on papers under Rule 78(b). For the reasons below, the Court respectfully recommends granting the motion.

## II. BACKGROUND

This case concerns allegations of a personal injury that occurred at a Target retail store on October 5, 2016 in Amherst, New York. On that day, around 11:15 AM, Flynn was shopping for products including air freshener products. Flynn was standing at or near the end of an aisle, at a type of product display perpendicular to the aisle products called an "end cap." [29-8 at 19, 83–84.] Flynn described at her deposition what happened next:

> I was standing on the end and it was fall season, I believe there were ones [air fresheners] like pumpkin and cranberry and I was just looking at a few and deciding what to purchase when all of a sudden I just felt my body being moved and everything kind of went black for a minute and then I didn't know like why I was being moved but I was moving and then I ended up around the corner. Then I looked up and I saw this big cart with this older woman on it and then I said to her, you drove right into me and then she just looked at me and said no, you drove into me. Like she thought I was on a cart.

[*Id.* at 25.] As best as Flynn can recall, someone using a motorized shopping cart exited an aisle from her left, turned left, and made contact with her left hip and leg. The cart driver pushed Flynn to the next aisle to her right. [*Id.* at 28.] Flynn never landed on the ground. [*Id.*] Despite Flynn's description that she "went black for a minute," she never lost consciousness. [*Id.* at 29.] Flynn had a verbal exchange with the cart driver but otherwise let the driver "go about her business." [*Id.* at 30.] Flynn did not know whether the cart driver purposefully tried to hit another shopper and guessed that the event was an accident. [*Id.* at 66.] Flynn did not report the incident right away to management. Flynn did not see anyone else using a motorized shopping cart that day. [*Id.* at 30.] Flynn never identified who the cart driver was. Flynn proceeded to check out with her items

2

without mentioning the incident to a cashier. [*Id.* at 33.] Although she felt pain when entering her car, Flynn left the store and arrived home about 15 minutes later. [*Id.* at 34.]

Flynn changed course once she arrived home. From home, Flynn called the store to report what occurred. [*Id.*] At management's invitation, Flynn returned to the store and filled out an incident report. [*Id.*] Flynn reported that she was not aware of any witnesses to the incident. [*Id.* at 36.] At her deposition, Flynn reported a comment from the store's staff to the effect that "they [*i.e.*, customers] were driving those things [*i.e.*, motorized carts] around here like crazy today" [*id.* at 38], but she acknowledged that she was speculating about the meaning of the comment and whether the unnamed staffer had seen anything herself [*id.* at 65]. Flynn sought no emergency treatment that day but did call her physicians at Excelsior Orthopedics. [*Id.* at 44.] Flynn has arthritis in both knees and has sought treatment periodically since about 2007. [*Id.* at 45, 50.] As for her left hip, Flynn feels stiffness about five times a month that goes away within a few minutes. [*Id.* at 59.]

Target generated three reports in response to Flynn's information. Store staff completed a Guest Incident Report with Flynn. [*Id.* at 85.] The form contains a "guest description" of the incident, which reads as follows: "Guest was selecting air care when a guest came around on [an] electric shopping cart and drove into her." [*Id.*] The form indicated that the floor was clean and dry. [*Id.*] The store then generated an Electronic Incident Report. [*Id.* at 87–88.] This report indicated that no video footage was available for the incident. [*Id.* at 87.] Finally, the store generated a form titled an LOD Investigation Report. [*Id.* at 89.] According to this form, no store staff responded to the incident, saw or heard the incident, or had to clean the floor in response to the incident. [*Id.*] In the section of the form reserved for overall observations of the scene, management noted: "Scene is clean, just a guest on guest incident." [*Id.*] Management noted Flynn's appearance as follows: "Guest seemed in pain and upset [that] the other guest did not apologize." [*Id.*]

3

Target store staff have provided some additional information through depositions or affidavits. The store does not know which cart was involved in the incident. [29-9 at 24.] The motorized shopping carts are inspected weekly, and any problems are reported. [*Id.*] To avoid possible discrimination, the store does not question why any particular person chooses to use a motorized shopping cart. [*Id.* at 34.] The motorized shopping carts have a maximum speed of three miles per hour, a manufacturer setting that cannot be changed by the store. [29-13 at 3.] Any motorized shopping cart in need of repair is taken out of service. [*Id.*] The motorized shopping carts contain warning and direction labels regarding use and operation. [*Id.*]

Flynn commenced this case in state court on February 10, 2017. The complaint contains allegations that Target negligently maintained its premises; that the motorized shopping cart in question was defective; that Target failed to warn Flynn about danger from the cart; that Target had actual and constructive notice about the cart including notice by reasonable inspection; and that Flynn suffered injuries as a result. [5-2 at 5.] Flynn's bill of particulars added allegations that Target failed to supervise people who use the motorized shopping carts and failed to anticipate injuries that could be caused by the carts. [29-4 at 3.] Target removed this case to federal court on June 22, 2017. [1.]

Target filed the pending motion on April 30, 2019. Target seeks summary judgment on the basis that, in its view, Flynn is assigning negligence to the mere decision to allow customers to use motorized shopping carts:

> Here, there is no evidence that Target created a hazardous condition or had notice, actual or constructive, of a dangerous or defective condition. The evidence before this Court demonstrates Target regularly inspected the electronic shopping carts and that Plaintiff's accident was caused by an unexpected and unforeseeable occurrence that Target had no opportunity to control, and for which it therefore cannot be held liable. *See Thomas v Costco Wholesale Corp.*, No. 153702/2015, 2017 WL 2444803 at *3 (N.Y. Sup. Ct. June 06, 2017) citing *Horst v. 725 Food Corp.*, 669 N.Y.S.2d 811 (1st Dept. 1998).

4

* * * *

>Almost identical facts exist in this case as they did in *Thomas*. Plaintiff was never able to identify the shopper that hit her, could provide no witnesses, and no video footage was captured of the incident. *See* Exhibit G pg. 17 and 34, *see also* Exhibit E. At her deposition, Plaintiff did not identify the cart that hit her, nor did she identify any defects with it. *See* Exhibit G. Mr. Suzano's [a store staffer] testimony establishes that Target allows all guests to use the carts and that he had never heard of a prior claim, report, or accident involving the electric carts. *See* Exhibit H pg. 31-34. Further, Mr. Suzano testified that the electric shopping carts are inspected once per week by the store's facility manager and that no carts were out of order in October 2016. *See* Exhibit H pg. 21-22.

[29-15 at 9–10.]

Flynn opposes Target's motion in its entirety. Flynn believes that Target had constructive notice of a defective motorized shopping cart because it knew that one of its customers had been using one on the day of the incident. [31-2 at 4.] To support the argument about constructive notice further, Flynn relies heavily on the comment from the unnamed staffer about unspecified other customers using carts:

>In this case, the evidence shows that it was an electric cart, driven by a guest, and not a gust of wind in the parking lot. Further, evidence via Plaintiff's testimony shows that at least one employee of Defendant noticed other customers "driving those things around here like crazy today, so fast [.]" *See* Ex. A at pg. 36, 62. Thus, Defendants had actual notice of the hazardous condition. While true that no surveillance footage revealed the impact, that alone is not dispositive. Thus, Plaintiff has raised a genuine issue of fact as to a material matter, actual notice of a dangerous or defective condition, which is a substantive element of the cause of action. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[*Id.* at 5.] Flynn argues further that Target has not rebutted her deposition testimony and that her deposition testimony alone can create a triable question of fact:

>Additionally, Defendant attempts to meet its burden with proof that Defendant employee Thiango Suzano did not witness or hear anything involving the accident, did not know the woman who allegedly struck Plaintiff, that no video footage was available depicting the accident. *See* Defendant's Declaration in Support of Motion for Summary Judgment, Dkt. 29-1, at pgs. 5, 6. Defendant cites to evidence that Defendant and its employees had no records of electric carts being in disrepair, and that Target has procedures in place for ensuring the proper

5

maintenance of its electric carts.  *See* Defendant's Declaration in Support of Motion for Summary Judgment, Dkt. 29-1, at pgs. 6, 7.  **None of Defendant's cited evidence rebuts Plaintiff's testimonial evidence.**  The fact that security camera did not capture footage of the accident, that an employee did not witness the accident, and that there are general procedures for keeping electric carts in good repair and that there were no records of said carts in disrepair scarcely rebut Plaintiff's testimonial evidence.  Critically, Defendant does not argue that the accident did not occur, nor does Defendant argue or cite evidence in support thereof that an employee of Defendant's actually did witness the accident.

[*Id.* at 7.]

### III.  DISCUSSION

#### A.  *Summary Judgment Generally*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . . More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted).  "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . . Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party."  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).  "Where, as here, the nonmovant would bear the burden of proof at trial, the movant may show prima facie entitlement to summary judgment by either (1) pointing to evidence that negates its opponent's claims or (2)

identifying those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact." *Barlow v. Male Geneva Police Officer who Arrested me on Jan. 2005*, 434 F. App'x 22, 25 (2d Cir. 2011) (summary order) (internal quotation and editorial marks and citation omitted).

Additionally, the Court is mindful that Flynn is relying largely on her own deposition testimony. "While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account. Under these circumstances, the moving party still must meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks and citations omitted).

### B. Premises and Product Liability Under New York Law

"New York law indicates that a landowner has a nondelegable duty to keep its premises reasonably safe under the circumstances. New York law holds that a landowner must exercise reasonable care to maintain its premises in a safe condition in view of the circumstances, accounting for the possibility of injury to others, the seriousness of such injury, and the burden of avoiding such risk. Aside from the final step of proving causation, a plaintiff must prove that the defendant breached its duty to the plaintiff. To do so, the plaintiff must prove: (1) that a dangerous condition existed and (2) that defendant either created the dangerous condition or that it had actual or constructive notice of its existence. In sum, an action for negligence will be successful if a there is an unreasonably unsafe condition on the defendant's property that the defendant knows or should

7

have known about, and this unreasonably unsafe condition causes a foreseeable plaintiff's injuries." *Gorecki v. Painted Pony Championship Rodeo, Inc.*, 6 Fed. App'x 103, 105 (2d Cir. 2001) (summary order) (internal quotation marks and citations omitted). To the extent that Flynn's complaint hints at product liability, the allegations come closest to claims about the design of the motorized shopping cart and the failure to warn about it. "To prove negligent design, a plaintiff must demonstrate that the product defect was a substantial factor in causing the injury, and that it was feasible to design the product in a safer manner; a defendant can rebut such a showing by presenting evidence that the product (as designed) is a safe product—that is, one whose utility outweighs its risks when the product has been designed so that the risks are reduced to the greatest extent possible while retaining the product's inherent usefulness at an acceptable cost. Practical engineering feasibility can be demonstrated by expert testimony concerning either a prototype that the expert has prepared or similar equipment using an alternative design that has been put into use by other makers. A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known. A manufacturer also has a duty to warn of the danger of unintended uses of a product provided these uses are reasonably foreseeable." *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 80 (2d Cir. 2006) (internal quotation marks and citations omitted).

Here, the Court has not been able to identify a triable issue of fact for either premises or product liability. Flynn is generally correct that Target has not discredited or otherwise rebutted her deposition testimony. In the absence of an identified cart, an identified cart driver, video footage, witnesses, or medical records detailing injuries, Flynn's testimony is neither verifiable nor falsifiable. The problem for Flynn, however, is that her testimony focused entirely on the conduct of the cart driver—how the cart driver made a turn into her and pushed her and then had a verbal exchange with her. Flynn did not sue the cart driver; she sued Target. With respect to Target, Flynn never

8

testified to any visible defects with the motorized shopping cart. The motorized shopping cart involved in the incident cannot be inspected because of Flynn's delay in reporting the incident. *Cf. Ramos v. Howard Indus., Inc.*, 885 N.E.2d 176, 179 (N.Y. 2008) ("Without the product available for testing and inspection (admittedly caused by plaintiffs lengthy delay in reporting the incident), defendant was unable to provide an expert opinion based upon an examination of the [product].") Flynn did not identify any deficiencies in Target's weekly inspections, such as a flaw in the inspection procedure or discrepancy in any inspection logs. Target's inspection protocol thus is uncontested. Flynn also did not testify as to any obstructions or problems with the floor area where the incident occurred. *Cf., e.g., Lyman v. PetSmart, Inc.*, No. 16 CIV. 04627 (JCM), 2018 WL 4538908, at *6 (S.D.N.Y. Sept. 21, 2018) ("Plaintiff has not set forth sufficient evidence to avoid summary judgment because she failed to identify an affirmative and deliberate act that can be attributed to Defendant" with respect to a puddle on the floor), *appeal dismissed* (Jan. 18, 2019); *Davis v. Golub Corp.*, 730 N.Y.S.2d 370, 371 (N.Y. App. Div. 2001) ("On the issue of whether defendant had notice of the unsafe condition, defendant presented the deposition testimony of the store's manager, Glenn Peek, who averred that he had inspected the floor of the aisle in question 10 minutes prior to plaintiff's fall, at which time the floor had been clean and dry. This proof was sufficient to sustain defendant's initial burden on its motion for summary judgment.") (citations omitted). Flynn has submitted no expert testimony regarding what warnings were missing from the cart or otherwise were not given to users of the carts. *Cf., e.g., Coleman v. Chesebro-Whitman Co.*, 690 N.Y.S.2d 729, 730 (1999) ("However, the appellant was entitled to summary judgment dismissing the cause of action to recover damages for strict products liability based on a failure to warn where the plaintiffs failed to allege what the labels would have warned against and in what way the lack of such warnings was a proximate cause of the accident.") (citations omitted). The Court is disregarding Flynn's reporting

of an unidentified staffer remarking about unidentified shoppers "driving like crazy" in carts at unspecified times. The remark contains at least one level of hearsay and would not be admitted at trial. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Finally, Flynn has not submitted medical records or any medical expert testimony detailing injuries that she suffers that can be separated from her arthritis or other pre-existing conditions.

In short, then, Target has met its burden under Rule 56 by showing—in the absence of a prompt reporting of the incident—that it inspects its carts regularly; that the floor was clean and dry at the time of the incident; and that no obstructions would have made the incident more likely. Flynn has responded by insisting that an incident occurred. Giving Flynn the benefit of the doubt on all of her deposition testimony still leaves her short of a triable question about defects that could be submitted to a reasonable jury.

## IV. CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends granting Target's motion. [29.]

## V. OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below. "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Any objections must be filed electronically with the Clerk of the Court through the CM/ECF system.

"As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted); *see also Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision.") (citation omitted). "We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object. The rule is enforced under our supervisory powers and is a nonjurisdictional waiver provision whose violation we may excuse in the interest of justice." *United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38–39 (2d Cir. 1997) (internal quotation marks and citations omitted).

"Where a party only raises general objections, a district court need only satisfy itself there is no clear error on the face of the record. Indeed, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review. Such objections would reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 312–13 (S.D.N.Y. 2009) (internal quotation and editorial marks and citations omitted).

SO ORDERED.

                                         __/s Hugh B. Scott_____
                                         Hon. Hugh B. Scott
                                         United States Magistrate Judge

DATED: August 20, 2019